**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900
(212) 661-9397 – facsimile
Jerold C. Feuerstein, Esq.
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq.
jfeuerstein@kandfllp.com
dzinman@kandfllp.com
skossar@kandfllp.com

**Hearing Date: March 10, 2023**
**Time: 10:30 a.m.**


**Objection Deadline: March 3, 2023**
**Time: 4:00 P.M.**

*Attorneys for DW Marcy, LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:                                                          Chapter 11

     425 Marcy LLC,                                    Case No. 23-40118-ess

                            Debtor.        Hon. Elizabeth S. Stong
                                    United States Bankruptcy Judge
-----------------------------------------------------------x

## <u>NOTICE OF MOTION</u>

    **PLEASE TAKE NOTICE**, that upon the annexed application of DW Marcy LLC ("<u>DW</u>

<u>Marcy</u>" and/or "<u>Secured Creditor</u>") by and through its attorneys, Kriss & Feuerstein LLP, will

move at a remote hearing by using the Zoom for Government® videoconferencing platform, before

the Honorable Elizabeth S. Stong, United States Bankruptcy Judge, at the United States

Bankruptcy Court of the Eastern District of New York, located at 271-C Cadman Plaza East,

Courtroom 3585, Brooklyn, NY 11201, on March 10, 2023 at 10:30 a.m., or as soon thereafter as

counsel can be heard, for entry of an Order: (i) confirming that the automatic stay is inapplicable

as to non-debtor, 415 Marcy Avenue LLC so Secured Creditor may exercise all rights and remedies

available to it under applicable law with respect to among other things, the pledged ownership

interests or limited liability interests in 415 Marcy Avenue LLC upon the instant bankruptcy filing

pursuant to 11 U.S.C. §§105, 362(c)(1) and 362(j); (ii) or alternatively, relief from the automatic stay pursuant to 11 U.S.C. §§ 105(a), 361, 362(d)(1), 362(d)(2) and 363 to permit Secured Creditor to exercise all rights and remedies available to it under applicable law with respect to among other things, the pledged ownership interests or limited liability interests in 415 Marcy Avenue LLC and waiving the fourteen (14) day stay imposed by FED. R. BANKR.P. 4001(a)(3); and (iii) granting such further and different relief as the Court may deem just and proper

**PLEASE TAKE FURTHER NOTICE** that effective March 7, 2022, all hearing participants must register with eCourt Appearances not less than 24 hours in advance of all appearances. The dial-in information and/or video link will be provided by email after registration with eCourt Appearances. Please see https://www.nyeb.uscourts.gov/content/judge-elizabeth-s-stong for further information.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the instant application must be made in writing and received in the Bankruptcy's Court Clerk's office at the United States Bankruptcy Court of the Eastern District of New York, located at the United States Courthouse located at 271-C Cadman Plaza East, Brooklyn, NY 11201, to the Office of the United States Trustee for the Eastern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, NY 10014 and to the undersigned, Kriss & Feuerstein LLP, 360 Lexington Avenue, 12th Floor, New York, New York 10017 no later than seven (7) days before the hearing date set forth herein.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Dated: New York, New York
February 9, 2023

KRISS & FEUERSTEIN LLP
*Attorneys for DW Marcy, LLC*

<u>*s/ Jerold C. Feuerstein*</u>
Jerold C. Feuerstein, Esq.
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq.
360 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 661-2900
(212) 661-9397 fax
<u>jfeuerstein@kandfllp.com</u>
<u>dzinman@kandfllp.com</u>
<u>skossar@kandfllp.com</u>

TO:

425 Marcy Avenue LLC - *Debtor*
81 Maple Avenue
Woodridge, NY 12789

Office of the United States Trustee -*U.S. Trustee*
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

RIA R Squared, Inc.
Ansell Grim & Aaron, P.C.
365 Rifle Camp Road
Woodland Park, NJ 07424
Attn: Joshua S. Bauchner, Esq.

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101

425 Marcy Avenue LLC a/k/a 415-425 Marcy Avenue LLC
415 Marcy Avenue
Brooklyn, NY 11206

Rachel S. Blumenfeld – *Attorney for Debtor*
Law Office of Rachel S. Blumenfeld
26 Court Street, Suite 2220
Brooklyn, NY 11242

RIA R Squared, Inc.
Ansell Grim & Aaron, P.C.
365 Rifle Camp Road
Woodland Park, NJ 07424
Attn: Anthony J D'Artiglio, Esq.

RIA R Squared, Inc.
Ansell Grim & Aaron, P.C.
365 Rifle Camp Road
Woodland Park, NJ 07424
Attn: Layne A. Feldman, Esq.

Double Solutions, Inc.
5308 13th Avenue 128
Brooklyn, NY 11219

Silvercup Scaffolding LLC
29 Lorimer Street
Brooklyn, NY 11219

4867-3053-3965, v. 2

Kings Building Material LLC
10 Powerhouse Road
Roslyn Heights, NY 11577

Rent A Unit NY Inc.
543 Bedford Avenue 243
Brooklyn, NY 11211

Big Apple Elevator Service & Consulting
244 Fifth Avenue 222
New York, NY 10001

Goldie Lebovits
c/o Andrea Caruso, Esq.
Abrams, Fensterman, Eisman, Formato,
Ferraro, Wolf & Carone, LLP
1 MetroTech Center, Suite 1701
Brooklyn, NY 11201

New York State Department of Taxation &
Finance
Attn: Office of Counsel
Building 9, WA Harriman Campus
Albany, NY 12227

Horizon Interiors, Inc.
14 Boerum Street
Brooklyn, NY 11206

ARI Services LLC
4809 Avenue N
Brooklyn, NY 11234

Aron Lebovits
c/o Andrea Caruso, Esq.
Abrams, Fensterman, Eisman, Formato,
Ferraro, Wolf & Carone, LLP
1 MetroTech Center, Suite 1701
Brooklyn, NY 11201

City of New York Environmental Control
Board
233 Schermerhorn Street, 11th Floor
Brooklyn, NY 11201

New York City Dept. of Finance
100 Church Street
New York, NY 10007

**KRISS & FEUERSTEIN LLP**
360 Lexington Avenue, Suite 1200
New York, New York 10017
(212) 661-2900
(212) 661-9397 – facsimile
Jerold C. Feuerstein, Esq.
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq.
jfeuerstein@kandfllp.com
dzinman@kandfllp.com
skossar@kandfllp.com

*Attorneys for DW Marcy, LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                                  Chapter 11

     425 Marcy LLC,                                  Case No. 23-40118-ess

                           Hon. Elizabeth S. Stong
                Debtor.                       United States Bankruptcy Judge
-------------------------------------------------------------x

## DW MARCY LLC'S APPLICATION FOR AN ORDER CONFIRMING THE AUTOMATIC STAY IS INAPPLICABLE TO NON-DEBTOR 415 MARCY LLC AND/OR THE COLLATERAL OR, ALTERNATIVELY, RELIEF FROM <u>THE AUTOMATIC STAY</u>

TO THE HONORABLE ELIZABETH S. STONG,
UNITED STATES BANKRUPTCY JUDGE:

      DW Marcy, LLC ("<u>DW Marcy</u>" and/or "<u>Secured Creditor</u>"), a secured creditor and mortgagee of the Debtor, 425 Marcy LLC (the "<u>Debtor</u>"), in the above referenced Chapter 11 bankruptcy case (the "<u>Bankruptcy Case</u>"), by and through its attorneys, Kriss & Feuerstein LLP, respectfully submits this application (the "<u>Application</u>") for the entry of an Order: (i) confirming that the automatic stay is inapplicable as to non-debtor, 415 Marcy Avenue LLC ("<u>415 Marcy</u>") so Secured Creditor may exercise all rights and remedies available to it under applicable law against 415 Marcy with respect to among other things, the pledged ownership interests or limited

liability interests held by 415 Marcy in the Debtor (the "Collateral") upon the instant bankruptcy filing pursuant to 11 U.S.C. §§105, 362(c)(1) and 362(j); (ii) or alternatively, relief from the automatic stay pursuant to 11 U.S.C. §§ 105(a), 361, 362(d)(1), 362(d)(2) and 363 to permit Secured Creditor to exercise all rights and remedies available to it under applicable law relating to 415 Marcy including (but not limited to) with respect to the Collateral and waiving the fourteen (14) day stay imposed by FED. R. BANKR.P. 4001(a)(3); and (iii) granting such further and different relief as the Court may deem just and proper.  In support of this Application, the Secured Creditor respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The instant chapter 11 case was clearly commenced in bad faith and solely for the purpose of preventing the Secured Creditor, the Debtor's single and only legitimate pre-petition secured creditor, from exercising its right to conduct a non-judicial foreclosure sale pursuant to the Uniform Commercial Code (the "UCC").

2.      As discussed below, the Debtor is the borrower under a construction loan issued by Secured Creditor, which is secured by various mortgages encumbering the real property located at 415-425 Marcy Avenue, Brooklyn, New York 11206 (Block: 2245, Lots: 1 and 5) (the "Property").

3.       415 Marcy is the 100% owner of the membership interests in the Debtor. Pursuant to a Pledge and Security Agreement, the membership interests of Debtor were pledged to Secured Creditor as collateral for the Loan (as defined herein). In addition, the Debtor also executed a Limited Liability Company Interest Certificate representing and confirming that 100% of the membership interests of Debtor were owned by 415 Marcy (See **Exhs. P & Q**).

4.      As discussed herein, the Debtor defaulted under the Loan and Secured Creditor sought to conduct a non-judicial foreclosure sale pursuant to the UCC. In addition, the Debtor and

2

415 Marcy filed multiple state court actions to thwart Secured Creditor's right to proceed with the UCC Sale and to enforce its rights under the Loan. Further, the Debtor filed for bankruptcy just one (1) day before a UCC sale.

5.      As 415 Marcy has not filed for bankruptcy, the automatic stay does not apply to it. In addition, the Collateral is not property of the Bankruptcy Estate. As such, it is respectfully submitted that this Court should issue a comfort order that the automatic stay does not apply to 415 Marcy to permit the Secured Creditor to enforce its rights against 415 Marcy to (among other things) proceed with a sale of the Collateral pursuant to the UCC.

6.      Alternatively, relief from the automatic stay is warranted under 11 U.S.C. §§ 105 and 362(d)(1) because: (i) there is a lack of adequate protection; (ii) this is a bad faith filing; and (iii) this Bankruptcy Case is a two-party dispute warranting relief under the Sonnax Factors (as defined herein). Further, Secured Creditor is entitled to relief pursuant to 11 U.S.C. §§ 105 and 362(d)(2) as the equity is declining and the Collateral is not necessary to an effective reorganization.

7.      Accordingly, and for the reasons set forth below, Secured Creditor respectfully requests that this Court enter an order: (i) confirming that the automatic stay is inapplicable as to 415 Marcy upon the instant bankruptcy filing pursuant to 11 U.S.C. §§105, 362(c)(1) and 362(j); (ii) or alternatively, relief from the automatic stay pursuant to 11 U.S.C. §§105 and 362(d)(1) to permit Secured Creditor to exercise any and all rights and remedies available to it under applicable law with respect to 415 Marcy and/or the Collateral and waiving the fourteen (14) day stay imposed by FED. R. BANKR.P. 4001(a)(3); and (iii) granting such further and different relief as the Court may deem just and proper.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 & 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

9.     The statutory predicates for the relief requested herein are 11 U.S.C. §§ 105(a),  361 362 (c)(1), 362(d)(1), 362(d)(2), 362(j), and 363 of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"), and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Rules").

## BACKGROUND

### The Building Loan, Project Loan and Term Loan

10.     On April 17, 2019, Debtor duly executed, acknowledged, and delivered to Secured Creditor, a Building Loan Promissory Note (the "Building Loan Note") in the principal amount of $16,808,100.05 (the "Building Loan"). A copy of the Building Loan Note is annexed hereto as **Exhibit "A"**.

11.     On April 17, 2019, to secure repayment of the indebtedness evidenced by the Building Loan Note, the Debtor duly executed, acknowledged, and delivered to Secured Creditor, a Building Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Building Loan Mortgage") in the amount of $16,808,100.05 encumbering the Property. The Building Loan Mortgage was recorded in the Office of the City Register of the City of New York, County of New York (the "Register's Office") on April 26, 2019 as City Register Filing No. ("CRFN"): 2019000133644.  A copy of the Building Loan Mortgage is annexed hereto as **Exhibit "B"**.

12.     On April 17, 2019, in connection with the Building Loan, the Debtor duly executed,

4

4881-8402-3375, v. 1

acknowledged, and delivered to Secured Creditor, a Building Loan Agreement (the "Building Loan Agreement"). A copy of the Building Loan Agreement is annexed hereto as **Exhibit "C"**.

13.     To further secure the Building Loan Note, Secured Creditor perfected a security interest against the personal property situated at the Property by filing a UCC-1 Financing Statement with the Register's Office, which was recorded with the Register's Office on April 26, 2019 under CRFN: 2019000133650 (the "Building Loan County UCC-1").  A copy of the Building Loan County UCC-1 is annexed hereto as **Exhibit "D"**.

14.     To further secure the Building Loan Note, Secured Creditor duly perfected its security interest in personal property situated at the Property by filing a UCC-1 Financing Statement  (the "Building Loan State UCC-1") on April 29, 2019 with the Secretary of the State of New York under Filing No. 104583. A copy of the Building Loan State UCC-1 is annexed hereto as **Exhibit "E"**.

15.     Secured Creditor is now the owner and holder of the original Building Loan Note, Building Loan Mortgage, Building Loan Agreement, Building Loan County UCC-1, Building Loan State UCC-1 and together with all other documents and/or agreements that were executed and/or delivered in connection with the Building Loan (collectively referred to as the "Building Loan Documents").

16.     On April 17, 2019, Debtor duly executed, acknowledged, and delivered to Secured Creditor, a Project Loan Promissory Note (the "Project Loan Note") in the principal amount of $2,041,899.95 (the "Project Loan"). A copy of the Project Loan Note is annexed hereto as **Exhibit "F"**.

17.     On April 17, 2019, to secure repayment of the indebtedness evidenced by the Project Loan Note, the Debtor duly executed, acknowledged, and delivered to Secured Creditor, a

4881-8402-3375, v. 1

Project Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Project Loan Mortgage") in the amount of $2,041,899.95 encumbering the Property. The Project Loan Mortgage was recorded in the Register's Office on April 26, 2019 as CRFN: 2019000133645. A copy of the Project Loan Mortgage is annexed hereto as **Exhibit "G"**.

18.     On April 17, 2019, in connection with the Project Loan Note, the Debtor duly executed, acknowledged, and delivered to Secured Creditor, a Project Loan Agreement (the "Project Loan Agreement"). A copy of the Project Loan Agreement is annexed hereto as **Exhibit "H"**.

19.     To further secure the Project Loan Note, Secured Creditor perfected a security interest against the personal property situated at the Property by filing a UCC-1 Financing Statement (the "Project Loan County UCC-1") with the Register's Office, which was recorded with the Register's Office on April 26, 2019 under CRFN: 2019000133651. A copy of the Project Loan UCC-1 is annexed hereto as **Exhibit "I"**.

20.     To further secure the Project Loan Note, Secured Creditor duly perfected its security interest in personal property situated at the Property by filing a UCC-1 Financing Statement  (the "Project Loan State UCC-1") on April 29, 2019 with the Secretary of the State of New York under Filing No. 104584. A copy of the Project Loan State UCC-1 is annexed hereto as **Exhibit "J"**.

21.     Secured Creditor is now the owner and holder of the original Project Loan Note, Project Loan Mortgage, Project Loan Agreement, Project Loan County UCC-1, Project Loan State UCC-1 and together with all other documents and/or agreements that were executed and/or delivered in connection with the Project Loan (collectively referred to as the "Project Loan Documents").

6

22.     On April 17, 2019, the Debtor duly executed, acknowledged, and delivered to Secured Creditor, a Consolidated, Amended and Restated Term Promissory Note (the "Term Loan Note") in the principal amount of $6,150,000.00 (the "Term Loan", and together with Building Loan and Project Loan, collectively, the "Loan"). A copy of the Term Loan Note is annexed hereto as **Exhibit "K"**.

23.     On April 17, 2019, to secure repayment of the indebtedness evidenced by the Term Loan Note, the Debtor duly executed, acknowledged, and delivered to Secured Creditor, a Consolidated, Amended and Restated Term Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Term Loan Mortgage") in the amount of $6,150,000.00 encumbering the Property. The Term Loan Mortgage was recorded in the Register's Office on April 26, 2019 as CRFN: 2019000133643.  A copy of the Term Loan Mortgage is annexed hereto as **Exhibit "L"**.

24.     On April 17, 2019, in connection with the Term Loan Note, the Debtor duly executed, acknowledged, and delivered to Secured Creditor, a Term Loan Agreement (the "Term Loan Agreement"). A copy of the Term Loan Agreement is annexed hereto as **Exhibit "M"**.

25.     To further secure the Term Loan Note, Secured Creditor perfected a security interest against the personal property situated at the Property by filing a UCC-1 Financing Statement with the Register's Office, which was recorded with the Register's Office on April 26, 2019 under CRFN: 2019000133649 (the "Term Loan County UCC-1").  A copy of the Term Loan County UCC-1 is annexed hereto as **Exhibit "N"**.

26.     To further secure the Term Loan Note, Secured Creditor duly perfected its security interest in personal property situated at the Property by filing a UCC-1 Financing Statement  (the "Term Loan State UCC-1") on April 29, 2019 with the Secretary of the State of New York under

7

Filing No 104582. A copy of the Term Loan State UCC-1 is annexed hereto as **Exhibit "O"**.

27.    Secured Creditor is now the owner and holder of the original Term Loan Note, Term Loan Mortgage, Term Loan Agreement, Term Loan County UCC-1, Term Loan State UCC-1 and together with all other documents and/or agreements that were executed and/or delivered in connection with the Term Loan (collectively referred to as the "Term Loan Documents").

28.    On April 17, 2019, as further security for the Loan, the Debtor duly executed, acknowledged, and delivered to the Secured Creditor a Pledge and Security Agreement (the "Pledge Agreement"), whereby pursuant to paragraph 5(h) of the Pledge Agreement,  415 Marcy was granted a first priority security interest in favor of Secured Creditor in all of 415 Marcy's right, title and interest in the Debtor. A copy of the Pledge Agreement is annexed hereto as **Exhibit "P"**.

29.    On April 17, 2019, in connection with the Loan, Debtor executed and provided Secured Creditor with a Limited Liability Company Interest Certificate (the "LLC Certificate") confirming that 100% of the membership interests of Debtor were owned by 415 Marcy. A copy of the LLC Agreement is annexed hereto as **Exhibit "Q"**.

30.    On April 17, 2019, 415 Marcy duly executed, acknowledged and delivered to Secured Creditor its original share certificate (the "Share Certificate") of its membership interests in Debtor. A copy of the Share Certificate is annexed hereto as **Exhibit "R"**.

31.    The Secured Creditor duly perfected its security interest in the Collateral by filing a UCC-1 Financing Statement (the "Pledge UCC Financing Statement") on April 29, 2019, with the Secretary of the State of New York under Filing No. 104586. A copy of the Pledge UCC Financing Statement is annexed hereto as **Exhibit "S"**.

32.    On April 17, 2019, as further security for the Loan, Ezra Unger (the "Guarantor" or "Unger"), individually, duly executed, acknowledged and delivered to the Secured Creditor, a

certain Guaranty of Recourse Obligations, (the "Guaranty of Recourse Obligations"), wherein the Guarantor, absolutely and unconditionally guaranteed the performance and repayment of all sums due under the Loan, as more particularly described therein. A copy of the Guaranty of Recourse Obligations is annexed hereto as **Exhibit "T"**.

33.    On April 17, 2019, Guarantor, individually, duly executed, acknowledged and delivered to the Secured Creditor, a certain Guaranty of Carry Obligations (the "Guaranty of Carry Obligations"), wherein the Guarantor, personally, unconditionally, directly, irrevocably and absolutely guaranteed the performance by Debtor of the full and timely payment to Secured Creditor of all operating deficits of the Debtor and provisions of the Loan pertaining to Debtor's obligations, as more particularly described therein.  A copy of the Guaranty of Carry Obligations is annexed hereto as **Exhibit "U"**.

34.    On April 17, 2019, Guarantor, individually, duly executed, acknowledged and delivered to Secured Creditor, a certain Guaranty of Completion (the "Guaranty of Completion" and together with the Guaranty of Recourse Obligations and the Guaranty of Carry Obligations, collectively, the "Guaranties"), wherein Guarantor absolutely and unconditionally guaranteed the performance by Debtor of all the terms and provisions of the Loan pertaining to Debtor's obligations, as more particularly described therein. A copy of the Guaranty of Completion is annexed hereto as **Exhibit "V"**.

35.    Secured Creditor is now the owner and holder of the original Building Loan Documents, the Project Loan Documents, the Term Loan Documents, the Pledge Agreement, the LLC Certificate, the Share Certificate, the Pledge UCC Financing Statement, the Guaranties, and together with any and all other loan documents in connection with the Loan (collectively, the "Loan Documents").

9

**The Default**

36.     The Debtor defaulted pursuant to the Loan Documents by failing to pay all outstanding principal plus all accrued and unpaid interest on or before June 1, 2021 (the "<u>Maturity Date</u>") (the "<u>Maturity Default</u>") (See **Ex. A**, at § 1.8; **Ex. F**, at § 1.8; **Ex. K**, at § 1.8; **Ex. W**).

37.     As is more particularly is set forth in that certain Notice of Maturity, Default and Demand for Payment dated June 2, 2021 (the "<u>Maturity Default Notice</u>"), amongst other things, the Debtor was advised of the Maturity Loan Default under the Loan Documents.  A copy of the Maturity Default Notice is annexed hereto as **Exhibit "W"**.

38.     In addition, the Debtor defaulted pursuant to the Loan Documents, by permitting further encumbrances on the Property without Secured Creditor's consent, which states it shall be an event of default under the Loan pursuant to the Building Loan Agreement, Project Loan Agreement, and Term Loan Agreement:

> "The recording of any mechanic's lien or claim of lien against in the Property and the continuance of such lien or claim of lien for thirty (30) days without discharge, satisfaction or provision for payment being made by Borrower in a manner reasonably satisfactory to Lender, or without provision of a bond to release such lien of record reasonably satisfactory to Lender; (ii) the condemnation, seizure or appropriation of, or the occurrence of a material uninsured casualty with respect to, any material portion of the Property; or (iii) the sequestration or attachment of, or any levy or execution upon, any of the Property, any Pledged Collateral, any other Collateral, or any substantial portion of the other assets of Borrower, which sequestration, attachment, levy or execution is not released, expunged or dismissed before the earlier of ninety (90) days or the sale of the assets affected thereby.

(See **Ex. C**, at §11.1.2; **Ex. H**, at §11.1.2; **Ex. M**, at §11.1.2).

39.     Without Secured Creditor's consent, the Debtor failed to discharge and/or bond each of the following mechanic's liens in accordance with the terms and conditions of the Loan Documents: (i) mechanic's lien docketed on October 15, 2021, under Control No. 004003465 01, by Double Solutions Inc., lienor, against the Property in the amount of $14,830.00 (the "<u>First</u>

10

Mechanic's Lien Default"), (ii) mechanic's lien docketed on November 24, 2021, under Control No. 004010572 03, by Silvercup Scaffolding LLC, lienor, against the Property in the amount of $63,011.30 (the "Second Mechanic's Lien Default"); (iii) mechanic's lien docketed on November 29, 2021, under Control No. 004011087 02, by Kings Building Material LLC, lienor, against the Property in the amount of $29,615.93 (the "Third Mechanic's Lien Default"); and (iv) mechanic's lien docketed on December 3, 2021, under Control No. 004012003 01, by Horizon Interiors Inc. in the amount of $119,411.30 (the "Fourth Mechanic's Lien Default"); (v) mechanic's lien docketed on December 6, 2021, under Control No. 004012114 01, by Rent A Unit NY Inc. in the amount of $13,185.00 (the "Fifth Mechanic's Lien Default"); and (vi) mechanic's lien docketed on March 3, 2022, under Control Nos. 004033164 01 and 004033164 02, by ARI Services LLC in the amount of $9,701.33 (the "Six Mechanic's Lien Default"); (vii) mechanic's lien docketed on June 16, 2022, under Control No. 004055365 01, by Big Apple Elevator Service & Consulting in the amount of $158,969.00 (the "Seventh Mechanic's Lien Default" and together with the First Mechanic's Lien Default, Second Mechanic's Lien Default, Third Mechanic's Lien Default, Fourth Mechanic's Lien Default, Fifth Mechanic's Lien Default and Sixth Mechanic's Lien Default, collectively, the "Mechanic's Lien Defaults" and together with the Maturity Default, collectively, the "Events of Default"). A copy of the Mechanic's Lien docket is annexed hereto as **Exhibit "X"**.

**UCC Sales and Pre-Petition Litigation**

40.    Due to the Events of Default, pursuant to the terms of the Loan Documents and UCC, the Secured Creditor issued a Notification of Disposition of Collateral scheduling a UCC Sale for December 13, 2021, of the membership interests held by 415 Marcy in the Debtor (the "First UCC Sale"). A copy of the Notice of Disposition of Collateral for the First UCC Sale is

11

annexed hereto as **Exhibit "Y"**.

41.      On December 9, 2021, Aron Lebovits ("Lebovits") commenced an action (the "First Action") in the New York State Supreme Court, County of Kings (the "Kings County Court") under Index No. 531507/2021 with a filing of a Summons and Complaint (the "Complaint") and Order To Show Cause (the "OSC") against Unger, Secured Creditor and others (the "Defendants") in the matter originally styled *Aron Lebovits v. Ezra Unger, et al.*, alleging multiple causes of action including a constructive trust on the Property and to stay the First UCC Sale. A copy of the Complaint and OSC are collectively annexed hereto as **Exhibit "Z"** (exhibits omitted) (See Also, First Action NYSCEF No. 1, 3-11).[1]

42.      On December 9, 2021, 415 Marcy and Debtor (collectively, the "425 Marcy Plaintiffs") also commenced an action (the "425 Marcy Action") in the New York State Supreme Court, County of New York (the "New York County Court") under Index No. 656900/2021 with a filing of the Summons and Complaint (the "425 Marcy Complaint") (verified by the Guarantor) asserting direct claims against Secured Creditor relating to the Loan Documents and stay the proposed public auction of 415 Marcy's membership interests of Debtor by the First UCC Sale. A copy of the 425 Marcy Complaint is annexed hereto as **Exhibit "BB"**. (See Also, 425 Marcy Action NYSCEF No. 1-13). [2]

43.      The 425 Marcy Action to stay the UCC sale was withdrawn as moot and there were multiple stipulations to extend Secured Creditor's time to respond to the 425 Marcy Complaint (See 425 Marcy Action NYSCEF No. 15, 18-21, 23-24, 28).  On December 21, 2022, 425 Marcy

---

[1] "First Action NYSCEF" refers to the documents on the New York State Courts Electronic Filing System for the First Action as provided on the document list annexed hereto as **Exhibit "AA"**.
[2] 425 Marcy Action NYSCEF" refers to the documents on the New York State Courts Electronic Filing System for the 425 Marcy Action as provided on the document list annexed hereto as **Exhibit "CC"**.

4881-8402-3375, v. 1

Plaintiffs' Counsel filed an application to withdraw as counsel of record which was scheduled for a hearing on January 13, 2023, but it is now stayed by the filing of the Bankruptcy Case (See 425 Marcy Action NYSCEF No. 25-27, 29).

44.     In the First Action, Lebovits obtained an Order (the "Stay Order") enjoining DW Marcy from conducting a previously noticed public auction of the membership interests in 425 Marcy conditional upon the posting of a $1.5 million bond. The injunction was vacated pursuant to its express terms ("Failure to post the undertaking in accordance with this decision shall result in the immediate vacatur of the injunction granted herein"). A copy of the Stay Order is annexed hereto as **Exhibit "DD"**.

45.     Secured Creditor and other defendants in the First Action also sought to dismiss the Complaint. On December 15, 2022, the State Court issued a Decision and Order (the "Dismissal Decision") that (amongst other things), dismissed Lebovits's "Tenth" claim, which sought the rescission of the Loan as well as years of additional transactions entered into as between Lebovits and Unger. A copy of the Dismissal Decision is annexed hereto as **Exhibit** "**EE**".

46.     On December 16, 2022, Lebovits commenced another action (the "Second Action") in the Kings County Court under Index No. 536763/2022 by summons and complaint (the "Second Action Complaint") upon the same facts and seeking the same relief in his individual capacity and derivatively on behalf of 425 Marcy. A copy of the Second Action Complaint is annexed hereto as **Exhibit "FF"** (exhibits omitted) (See Also, Second Action NYSCEF No. 1-44).[3]

47.      Together with the filing of the Second Action, Lebovits also moved for an immediate temporary restraining order (See Second Action NYSCEF No. 45-51). By Order

---

[3] "Second Action NYSCEF" refers to the documents on the New York State Courts Electronic Filing System for the Second Action as provided on the document list annexed hereto as **Exhibit "GG"**.

entered December 21, 2022 (the "Second Action Dismissal Order"), the Kings County Court denied Lebovits's motion for a TRO and dismissed the Second Action (noting that a "nearly identical application was made by [Lebovits]" in the First Action and Lebovits "failed to post the required bond to support the injunctive relief" and there was simply "no basis to grant the same relief" in the Second Action). Further, "To the extent that the relief plaintiff seeks in this action differs from that sought by him in the [First] Action, plaintiff may amend his pleadings in the [First] Action. A copy of the Second Action Dismissal Order is annexed hereto as **Exhibit "HH"**.

48.     On December 27, 2022, Lebovits filed a notice of appeal of the dismissal of the Second Action with the Appellate Division, Second Department (the "Appellate Division") (Index No. 2022-10445) and on December 28, 2022, filed yet another motion seeking an immediate temporary restraining order and preliminary injunction.

49.     On December 29, 2022, the Appellate Division denied Lebovits's request for a temporary restraining order and preliminary injunction (the "TRO Denial Order") by striking that provision from the proposed order to show cause. A copy of the TRO Denial Order is annexed hereto as **Exhibit "II"**.

50.     Secured Creditor again undertook efforts to schedule another sale of the Collateral pursuant to the UCC issued a Notification of Disposition of Collateral scheduling a UCC Sale for January 17, 2023, of the membership interests held by 415 Marcy in the Debtor (the "Second UCC Sale"). A copy of the Notice of Disposition for the Second UCC is annexed hereto as **Exhibit "JJ"**.

**The Instant Bankruptcy Proceeding**

51.     On January 16, 2023 ("Petition Date"), just one day before the Second UCC Sale, the Debtor filed a voluntary petition (the "Petition") under Chapter 11 of the Bankruptcy Code. As

such, the Second UCC Sale was stayed.

52.    The Petition indicates that that the Debtor did not select to designate itself as a Single Asset Real Estate Debtor, pursuant to 11 U.S.C. §101(51B) [ECF No. 1].

53.    A meeting of creditors pursuant to 11 U.S.C. 341(a) of the Bankruptcy Code is scheduled for February 13, 2023 [ECF No. 13].

54.    The Debtor has not identified any creditors other than Secured Creditor [ECF No. 1].

55.    In addition, the Debtor values the Property at $19,600,00 and lists Secured Creditor with an unsecured claim in the amount of $31,033,782.65 [ECF No. 1, Statement of Financial Affairs, Schedules E/F]. [4]

56.    On January 22, 2022, the Debtor filed an application seeking the entry of an Order fixing a deadline and establishing procedures for filing proofs of claim and an application to retain the Law Office of Rachel S. Blumenfeld as counsel to the Debtor [ECF No. 11, 12].

57.    To date, the Debtor has not prosecuted this bankruptcy case to any meaningful extent, including but not limited to, filing a plan of reorganization or making post-petition payments to the Secured Creditor.

58.    Accordingly, the Debtor's latest bankruptcy filing is nothing more than a delaying tactic.

## **RELIEF SOUGHT**

### I.    **Comfort Order Is Warranted**

59.    As set forth in the Memorandum of Law, 415 Marcy has not filed for bankruptcy

---

[4] The Debtor incorrectly lists DW Marcy as an unsecured creditor despite DW Marcy being secured by (amongst other things) its mortgages encumbering the Property (See ECF No. 1, Schedule E/F; See Also, Application, at ¶¶ 10-35). As such, DW Marcy is a secured creditor and reserves all rights accordingly.

4881-8402-3375, v. 1

and the Debtor's bankruptcy filing does not stay a sale pursuant to the UCC as it relates to 415 Marcy and/or the Collateral. The Debtor and 415 Marcy cannot attempt use the Debtor's bankruptcy filing as shield to prevent Secured Creditor from pursuing its remedies against 415 Marcy pursuant to the UCC. Accordingly, the Secured Creditor respectfully submits that this Court should enter an order confirming the automatic stay does not impact the any rights and remedies relating to 415 Marcy including (but not limited to) the sale of the Collateral pursuant to the UCC.

60.    Further, in the event this Court grants Secured Creditor's application for a declaration that the automatic stay is not applicable, pursuant to 11 U.S.C. § 362(j), the proposed order acknowledges the automatic stay shall apply to Property, unless otherwise ordered by this Court (See Ex. KK)

## II.    <u>Alternatively, Relief From the Automatic Stay Should Be Granted</u>

61.    Pursuant the Declaration of Houdin Honarvar (the "<u>Honarvar Declaration</u>") in support of Secured Creditor's instant application, the Debtor has failed to tender any post-petition payments to Secured Creditor. In addition, as the Debtor has no income, the Secured Creditor will be forced to expend sums on post-petition taxes.

62.    Further, as set forth in the accompanying memorandum of law, the Debtor seeks to use the Bankruptcy Code as a shield to prevent the UCC sale.  As such, the instant filing the eve of the Second UCC Sale in order to claim automatic stay protection constitutes a bad faith filing. The bankruptcy filing is a mere sham as the Debtor has exhausted all state court remedies to delay a UCC Sale amidst a two-party dispute between Debtor and Secured Creditor. Accordingly, the Secured Creditor respectfully requests that it be granted relief from the automatic stay pursuant to 11 U.S.C. §362(d)(1).

63.    As of January 27, 2023, $33,115,801.81 is due and owing to the Secured Creditor.

4881-8402-3375, v. 1

[See Houdin Honarvar Declaration]. The total value of the Property is $19,600,000 according to its Schedules [See ECF No.1, Schedule A/B]. In addition, Debtor acknowledges Secured Creditor is owed $31,033,782.65 [See ECF No.1, Schedule E/F]. As such, there is no equity remaining in the Property. In addition, the Property is not used as significant source of income and generates $0 income. As a result, Secured Creditor will have to have advance carry costs including (but not limited to) taxes and insurance. Accordingly, the value of the Collateral is declining each day as Secured Creditor is prevented from exercising its contractual rights to sell the Collateral pursuant to the UCC. As such, the Secured Creditor respectfully requests that it be granted relief from the automatic stay pursuant to 11 U.S.C. §362(d)(2).

64.    To the extent necessary, Secured Creditor requests waiver of the fourteen-day stay Fed. R. Bankr. P. 4001(a)(3) so that it can promptly proceed with respect to the Collateral as the two-week delay will result in the potential dissipation of assets.

## APPLICATION

65.    The Secured Creditor hereby requests that this honorable Court enter an Order: confirming that the automatic stay is inapplicable as to non-debtor, 415 Marcy so Secured Creditor may exercise all rights and remedies available to it under applicable law against 415 Marcy with respect the Collateral upon the instant bankruptcy filing pursuant to 11 U.S.C. §§105, 362(c)(1) and 362(j); (ii) or alternatively, relief from the automatic stay pursuant to 11 U.S.C. §§ 105(a), 361, 362(d)(1), 362(d)(2) and 363 to permit Secured Creditor to exercise all rights and remedies available to it under applicable law relating to 415 Marcy including (but not limited to) with respect to the Collateral and waiving the fourteen (14) day stay imposed by FED. R. BANKR.P. 4001(a)(3); and (iii) granting such further and different relief as the Court may deem just and proper.

4881-8402-3375, v. 1

## <u>RESERVATION OF RIGHTS AND NOTICE</u>

66.     Secured Creditor expressly reserves its right to amend or supplement this Motion, to introduce evidence supporting this Application at the hearing on the Application, and to file additional and supplemental objections as Secured Creditor deems advisable.

67.     Notice of this Application has been provided to the Office of the United States Trustee, the Debtor, the Debtor's counsel, 415 Marcy Avenue, all creditors of the Debtor entitled to notice in this Chapter 11 case and any party that has filed a notice of appearance pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, Secured Creditor submits that no other or further notices need be provided.

68.     A proposed order is annexed hereto as **Exhibit "KK"**.

69.     No previous application for the relief sought herein has been filed before this Court in this case.

**[The remainder of this page is left intentionally blank]**

4881-8402-3375, v. 1

**WHEREFORE**, Secured Creditor hereby requests that this honorable Court enter an Order: (i) confirming that the automatic stay is inapplicable as to non-debtor, 415 Marcy Avenue LLC so Secured Creditor may exercise all rights and remedies available to it under applicable law against 415 Marcy with respect the Collateral upon the instant bankruptcy filing pursuant to 11 U.S.C. §§105, 362(c)(1) and 362(j); (ii) or alternatively, relief from the automatic stay pursuant to 11 U.S.C. §§ 105(a), 361, 362(d)(1), 362(d)(2) and 363 to permit Secured Creditor to exercise all rights and remedies available to it under applicable law relating to 415 Marcy including (but not limited to) with respect to the Collateral and waiving the fourteen (14) day stay imposed by FED. R. BANKR.P. 4001(a)(3); and (iii) granting such further and different relief as the Court may deem just and proper.

Dated: New York, New York
      February 9, 2023

KRISS & FEUERSTEIN LLP
*Attorneys for DW Marcy LLC*

*s/ Jerold C. Feuerstein*
Jerold C. Feuerstein, Esq.
Daniel N. Zinman, Esq.
Stuart L. Kossar, Esq.
360 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 661-2900
(212) 661-9397 fax
jfeuerstein@kandfllp.com
dzinman@kandfllp.com
skossar@kandfllp.com

19

4881-8402-3375, v. 1