UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                              Chapter 11

     425 Marcy LLC,                                     Case No. 23-40118-ess

                                           Hon. Elizabeth S. Stong
                          Debtor.                          United States Bankruptcy Judge
------------------------------------------------------------x

**DECLARATION OF HOUDIN HONARVAR IN SUPPORT OF DW MARCY, LLC'S APPLICATION FOR AN ORDER CONFIRMING THE AUTOMATIC STAY IS INAPPLICABLE TO NON-DEBTOR 415 MARCY AND/OR THE COLLATERAL, OR ALTERNATIVELY, RELIEF FROM THE AUTOMATIC STAY**[1]

     Pursuant to 28 U.S.C. § 1746, Houdin Honarvar, declares as follows:

     1.     I am an Officer of DW Marcy, LLC ("DW Marcy" or "Secured Creditor"), a secured creditor and interested party to this Chapter 11 case of 425 Marcy LLC (the "Debtor"). I have personal knowledge of the facts of this case and the events that transpired to date based upon the files maintained by the Secured Creditor in the ordinary course of its business. As such, I am fully familiar with the facts and circumstances of this matter.

     2.     As part of my responsibilities for Secured Creditor, I am familiar with the type of records maintained in connection with the subject loan. The information in this Declaration is taken from Secured Creditor's business records and I have personal knowledge of Secured Creditor's procedures for creating these records. They are: (a) made at or near the time of the occurrence of the matters recorded by a person with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of Secured Creditor's regularly conducted business activities; and (c) it is the regular practice of Secured Creditor to make such records.

---

[1] Capitalized terms used herein but not otherwise defined shall have the meanings given to them in the Application in Support of the Entry of an Order Confirming the Automatic Stay Is Inapplicable or Alternatively, Granting Relief From the Automatic Stay (the "Application in Support").

3. I submit this Declaration in support of the Secured Creditor's Application for the entry of an Order: (i) confirming that the automatic stay is inapplicable as to non-debtor, 415 Marcy Avenue LLC ("415 Marcy") so Secured Creditor may exercise all rights and remedies available to it under applicable law against 415 Marcy with respect to among other things, the pledged ownership interests or limited liability interests held by 415 Marcy in the Debtor (the "Collateral") upon the instant bankruptcy filing pursuant to 11 U.S.C. §§105, 362(c)(1) and 362(j); (ii) or alternatively, relief from the automatic stay pursuant to 11 U.S.C. §§ 105(a), 361, 362(d)(1), 362(d)(2) and 363 to permit Secured Creditor to exercise all rights and remedies available to it under applicable law relating to 415 Marcy including (but not limited to) with respect to the Collateral and waiving the fourteen (14) day stay imposed by FED. R. BANKR.P. 4001(a)(3); and (iii) granting such further and different relief as the Court may deem just and proper.

4. By way of the Application, the Secured Creditor seeks to pursue its rights and remedies in connection with a commercial loan pursuant to the UCC.

**The Loan**

5. On April 17, 2019, Debtor duly executed, acknowledged, and delivered to Secured Creditor, the Building Loan Note in the principal amount of $16,808,100.05 in connection with the Building Loan. A copy of the Building Loan Note is annexed hereto as **Exhibit "A"**.

6. On April 17, 2019, to secure repayment of the indebtedness evidenced by the Building Loan Note, the Debtor duly executed, acknowledged, and delivered to Secured Creditor, a Building Loan Mortgage in the amount of $16,808,100.05 encumbering the Property. The Building Loan Mortgage was recorded in the Register's Office on April 26, 2019 as CRFN: 2019000133644. A copy of the Building Loan Mortgage is annexed hereto as **Exhibit "B"**.

7. On April 17, 2019, in connection with the Building Loan, the Debtor duly executed,

acknowledged, and delivered to Secured Creditor, the Building Loan Agreement. A copy of the Building Loan Agreement is annexed hereto as **Exhibit "C"**.

8. To further secure the Building Loan Note, Secured Creditor perfected a security interest against the personal property situated at the Property by filing the Building Loan County UCC-1 with the Register's Office, which was recorded with the Register's Office on April 26, 2019 under CRFN: 2019000133650. A copy of the Building Loan County UCC-1 is annexed hereto as **Exhibit "D"**.

9. To further secure the Building Loan Note, Secured Creditor duly perfected its security interest in personal property situated at the Property by filing a Building Loan State UCC-1 on April 29, 2019 with the Secretary of the State of New York under Filing No. 104583. A copy of the Building Loan State UCC-1 is annexed hereto as **Exhibit "E"**.

10. Secured Creditor is now the owner and holder of the original Building Loan Note, Building Loan Mortgage, Building Loan Agreement, Building Loan County UCC-1, Building Loan State UCC-1 and together with all other documents and/or agreements that were executed and/or delivered in connection with the Building Loan (collectively referred to as the "<u>Building Loan Documents</u>"). In addition, Secured Creditor has been in actual physical possession of the original Building Loan Note since April 17, 2019 through the date of this Declaration.

11. On April 17, 2019, Debtor duly executed, acknowledged, and delivered to Secured Creditor, a Project Loan Note in the principal amount of $2,041,899.95 in connection with the Project Loan. A copy of the Project Loan Note is annexed hereto as **Exhibit "F"**.

12. On April 17, 2019, to secure repayment of the indebtedness evidenced by the Project Loan Note, the Debtor duly executed, acknowledged, and delivered to Secured Creditor, the Project Loan Mortgage in the amount of $2,041,899.95 encumbering the Property. The Project

Loan Mortgage was recorded in the Register's Office on April 26, 2019 as CRFN: 2019000133645. A copy of the Project Loan Mortgage is annexed hereto as **Exhibit "G"**.

13. On April 17, 2019, in connection with the Project Loan Note, the Debtor duly executed, acknowledged, and delivered to Secured Creditor, the Project Loan Agreement. A copy of the Project Loan Agreement is annexed hereto as **Exhibit "H"**.

14. To further secure the Project Loan Note, Secured Creditor perfected a security interest against the personal property situated at the Property by filing the Project Loan County UCC-1 Financing Statement with the Register's Office, which was recorded with the Register's Office on April 26, 2019 under CRFN: 2019000133651. A copy of the Project Loan UCC-1 is annexed hereto as **Exhibit "I"**.

15. To further secure the Project Loan Note, Secured Creditor duly perfected its security interest in personal property situated at the Property by filing the Project Loan State UCC-1 Financing Statement on April 29, 2019 with the Secretary of the State of New York under Filing No. 104584. A copy of the Project Loan State UCC-1 is annexed hereto as **Exhibit "J"**.

16. Secured Creditor is now the owner and holder of the original Project Loan Note, Project Loan Mortgage, Project Loan Agreement, Project Loan County UCC-1, Project Loan State UCC-1 and together with all other documents and/or agreements that were executed and/or delivered in connection with the Project Loan (collectively referred to as the "Project Loan Documents"). In addition, Secured Creditor has been in actual physical possession of the original Project Loan Note since April 17, 2019 through the date of this Declaration.

17. On April 17, 2019, the Debtor duly executed, acknowledged, and delivered to Secured Creditor, the Term Loan Note in the principal amount of $6,150,000.00 in connection with the Term Loan. A copy of the Term Loan Note is annexed hereto as **Exhibit "K"**.

18. On April 17, 2019, to secure repayment of the indebtedness evidenced by the Term Loan Note, the Debtor duly executed, acknowledged, and delivered to Secured Creditor the Term Loan Mortgage in the amount of $6,150,000.00 encumbering the Property. The Term Loan Mortgage was recorded in the Register's Office on April 26, 2019 as CRFN: 2019000133643  A copy of the Term Loan Mortgage is annexed hereto as **Exhibit "L"**.

19. On April 17, 2019, in connection with the Term Loan Note, the Debtor duly executed, acknowledged, and delivered to Secured Creditor, the Term Loan Agreement. A copy of the Term Loan Agreement is annexed hereto as **Exhibit "M"**.

20. To further secure the Term Loan Note, Secured Creditor perfected a security interest against the personal property situated at the Property by filing a Term Loan County UCC-1 Financing Statement with the Register's Office, which was recorded with the Register's Office on April 26, 2019 under CRFN: 2019000133649.  A copy of the Term Loan County UCC-1 is annexed hereto as **Exhibit "N"**.

21. To further secure the Term Loan Note, Secured Creditor duly perfected its security interest in personal property situated at the Property by filing the Term Loan State UCC-1 on April 29, 2019 with the Secretary of the State of New York under Filing No 104582. A copy of the Term Loan State UCC-1 is annexed hereto as **Exhibit "O"**.

22. Secured Creditor is now the owner and holder of the original Term Loan Note, Term Loan Mortgage, Term Loan Agreement, Term Loan County UCC-1, Term Loan State UCC-1 and together with all other documents and/or agreements that were executed and/or delivered in connection with the Term Loan (collectively referred to as the "Term Loan Documents"). In addition, Secured Creditor has been in actual physical possession of the original Term Loan Note since April 17, 2019 through the date of this Declaration.

23. On April 17, 2019, as further security for the Loan, the Debtor duly executed, acknowledged, and delivered to the Secured Creditor the Pledge Agreement, whereby pursuant to paragraph 5(h) of the Pledge Agreement, 415 Marcy was granted a first priority security interest in favor of Secured Creditor in all of 415 Marcy's right, title and interest in the Debtor. A copy of the Pledge Agreement is annexed hereto as **Exhibit "P"**.

24. On April 17, 2019, in connection with the Loan, Debtor executed and provided Secured Creditor with the LLC Certificate confirming that 100% of the membership interests of Debtor were owned by 415 Marcy. A copy of the LLC Agreement is annexed hereto as **Exhibit "Q"**.

25. On April 17, 2019, 415 Marcy duly executed, acknowledged and delivered to Secured Creditor its original Share Certificate of its membership interests in Debtor in furtherance of the Pledge Agreement. A copy of the Share Certificates is annexed hereto as **Exhibit "R"**.

26. Secured Creditor (or an agent on its behalf) has been in actual physical possession of the Pledge Agreement, LLC Certificate, and Share Certificate since April 17, 2019 through the date of this Declaration.

27. The Secured Creditor duly perfected its security interest in the Collateral by filing the Pledge Finance Statement on April 29, 2019 with the Secretary of the State of New York under Filing No. 104586. A copy of the Pledge UCC Financing Statement is annexed hereto as **Exhibit "S"**.

28. On April 17, 2019, as further security for the Loan, Guarantor, individually, duly executed, acknowledged and delivered to the Secured Creditor, the Guaranty of Recourse Obligations, wherein the Guarantor absolutely and unconditionally guaranteed the performance and repayment of all sums due under the Loan, as more particularly described therein. A copy of

the Guaranty of Recourse Obligations is annexed hereto as **Exhibit "T"**.

29. On April 17, 2019, Guarantor, individually, duly executed, acknowledged and delivered to the Secured Creditor, the Guaranty of Carry Obligations, wherein the Guarantor, personally, unconditionally, directly, irrevocably and absolutely guaranteed the performance by Debtor of the full and timely payment to Secured Creditor of all operating deficits of the Debtor and provisions of the Loan pertaining to Debtor's obligations, as more particularly described therein. A copy of the Guaranty of Carry Obligations is annexed hereto as **Exhibit "U"**.

30. On April 17, 2019, Guarantor, individually, duly executed, acknowledged and delivered to Secured Creditor, the Guaranty of Completion, wherein Guarantor, absolutely and unconditionally guaranteed the performance by Debtor of all the terms and provisions of the Loan pertaining to Debtor's obligations, as more particularly described therein. A copy of the Guaranty of Completion is annexed hereto as **Exhibit "V"**.

31. Secured Creditor is now the owner and holder of the original Building Loan Documents, the Project Loan Documents, the Term Loan Documents, the Pledge Agreement, the LLC Certificate, the Share Certificate, the Pledge UCC Financing Statement, the Guaranties, and together with any and all other loan documents in connection with the Loan (collectively, the "<u>Loan Documents</u>").

**<u>The Default</u>**

32. The Debtor defaulted pursuant to the Loan Documents by failing to pay all outstanding principal plus all accrued and unpaid interest on or before the Maturity Date (See **Ex. A**, at § 1.8; **Ex. F**, at § 1.8; **Ex. K**, at § 1.8; **Ex. W**).

33. As is more particularly is set forth in the Maturity Default Notice dated June 2, 2021, amongst other things, the Debtor was advised of the Maturity Loan Default under the Loan

Documents. A copy of the Maturity Default Notice is annexed hereto as **Exhibit "W"**.

34. In addition, the Debtor defaulted pursuant to the Loan Documents, by permitting further encumbrances on the Property without Secured Creditor's consent, which states it shall be an event of default under the Loan pursuant to the Building Loan Agreement, Project Loan Agreement, and Term Loan Agreement:

> "The recording of any mechanic's lien or claim of lien against in the Property and the continuance of such lien or claim of lien for thirty (30) days without discharge, satisfaction or provision for payment being made by Borrower in a manner reasonably satisfactory to Lender, or without provision of a bond to release such lien of record reasonably satisfactory to Lender; (ii) the condemnation, seizure or appropriation of, or the occurrence of a material uninsured casualty with respect to, any material portion of the Property; or (iii) the sequestration or attachment of, or any levy or execution upon, any of the Property, any Pledged Collateral, any other Collateral, or any substantial portion of the other assets of Borrower, which sequestration, attachment, levy or execution is not released, expunged or dismissed before the earlier of ninety (90) days or the sale of the assets affected thereby.

(See **Ex. C**, at §11.1.2; **Ex. H**, at §11.1.2; **Ex. M**, at §11.1.2).

35. Without Secured Creditor's consent, the Debtor failed to discharge and/or bond each of the following mechanic's liens in accordance with the terms and conditions of the Loan Documents: (i) mechanic's lien docketed on October 15, 2021, under Control No. 004003465 01, by Double Solutions Inc., lienor, against the Property in the amount of $14,830.00 (the "First Mechanic's Lien Default"), (ii) mechanic's lien docketed on November 24, 2021, under Control No. 004010572 03, by Silvercup Scaffolding LLC, lienor, against the Property in the amount of $63,011.30 (the "Second Mechanic's Lien Default"); (iii) mechanic's lien docketed on November 29, 2021, under Control No. 004011087 02, by Kings Building Material LLC, lienor, against the Property in the amount of $29,615.93 (the "Third Mechanic's Lien Default"); and (iv) mechanic's lien docketed on December 3, 2021, under Control No. 004012003 01, by Horizon Interiors Inc. in the amount of $119,411.30 (the "Fourth Mechanic's Lien Default"); (v) mechanic's lien

docketed on December 6, 2021, under Control No. 004012114 01, by Rent A Unit NY Inc. in the amount of $13,185.00 (the "Fifth Mechanic's Lien Default"); and (vi) mechanic's lien docketed on March 3, 2022, under Control Nos. 004033164 01 and 004033164 02, by ARI Services LLC in the amount of $9,701.33 (the "Six Mechanic's Lien Default"); (vii) mechanic's lien docketed on June 16, 2022, under Control No. 004055365 01, by Big Apple Elevator Service & Consulting in the amount of $158,969.00 (the "Seventh Mechanic's Lien Default" and together with the First Mechanic's Lien Default, Second Mechanic's Lien Default, Third Mechanic's Lien Default, Fourth Mechanic's Lien Default, Fifth Mechanic's Lien Default and Sixth Mechanic's Lien Default, collectively, the "Mechanic's Lien Defaults" and together with the Maturity Default, collectively, the "Events of Default"). A copy of the Mechanic's Lien docket is annexed hereto as **Exhibit "X"**.

**UCC Sales and Pre-Petition Litigation**

36.     Due to the Events of Default, pursuant to the terms of the Loan Documents and UCC, the Secured Creditor issued a Notification of Disposition of Collateral scheduling a UCC Sale for December 13, 2021 of the membership interests held by 415 Marcy in the Debtor. A copy of the Notice of Disposition of Collateral for the First UCC Sale is annexed hereto as **Exhibit "Y"**.

37.     On December 9, 2021, Lebovits commenced the First Action in the Kings County Supreme under Index No. 531507/2021 with a filing of a Summons and the and Order To Show Cause (the "OSC") against Unger, Secured Creditor and others in the matter originally styled *Aron Lebovits v. Ezra Unger*, *et al*., alleging multiple causes of action including a constructive trust on the Property and to stay the First UCC Sale. A copy of the Complaint and OSC are collectively annexed hereto as **Exhibit "Z"** (exhibits omitted) (See Also, First Action NYSCEF No. 1, 3-11).[2]

---

[2] "First Action NYSCEF" refers to the documents on the New York State Courts Electronic Filing System for the First Action as provided on the document list annexed hereto as **Exhibit "AA"**.

38. On December 9, 2021, 415 Marcy and Debtor (collectively, the "425 Marcy Plaintiffs") also commenced the 425 Marcy Action in the New York State Supreme Court, County of New York under Index No. 656900/2021 with a filing of the Summons and the 425 Marcy Complaint (verified by the Guarantor) asserting direct claims against Secured Creditor relating to the Loan Documents and stay the proposed public auction of 415 Marcy's membership interests of Debtor by the First UCC Sale. A copy of the 425 Marcy Complaint is annexed hereto as **Exhibit "BB"**. (See Also, 425 Marcy Action NYSCEF No. 1-13).[3]

39. The 425 Marcy Action to stay the UCC sale was withdrawn as moot and there were multiple stipulations to extend Secured Creditor's time to respond to the 425 Marcy Complaint (See 425 Marcy Action NYSCEF No. 15, 18-21, 23-24, 28). On December 21, 2022, 425 Marcy Plaintiffs' Counsel filed an application to withdraw as counsel of record which was scheduled for a hearing on January 13, 2023 but it is now stayed by the filing of the Bankruptcy Case (See 425 Marcy Action NYSCEF No. 25-27, 29).

40. In the First Action, Lebovits obtained the Stay Order enjoining DW Marcy from conducting a previously-noticed public auction of the membership interests in 425 Marcy conditional upon the posting of a $1.5 million bond. Since the bond was not posted, the injunction was vacated pursuant to its express terms ("Failure to post the undertaking in accordance with this decision shall result in the immediate vacatur of the injunction granted herein"). A copy of the Stay Order is annexed hereto as **Exhibit "DD"**.

41. Secured Creditor and other defendants in the First Action also sought to dismiss the Complaint. On December 15, 2022, the State Court issued the Dismissal Decision that (amongst other things), dismissed Lebovits's "Tenth" claim, which sought the rescission of the Loan as well

---

[3] 425 Marcy Action NYSCEF" refers to the documents on the New York State Courts Electronic Filing System for the 425 Marcy Action as provided on the document list annexed hereto as **Exhibit "CC"**.

as years of additional transactions entered into as between Lebovits and Unger. A copy of the Dismissal Decision is annexed hereto as **Exhibit** "**EE**".

42. On December 16, 2022, Lebovits commenced the Second Action in the Kings County Court under Index No. 536763/2022 by summons and the Sconed Action Complaint (upon the same facts and seeking the same relief in his individual capacity and derivatively on behalf of 425 Marcy). A copy of the Second Action Complaint is annexed hereto as **Exhibit "FF"** (exhibits omitted) (See Also, Second Action NYSCEF No. 1-44).[4]

43. Together with the filing of the Second Action, Lebovits also moved for an immediate temporary restraining order (a "TRO") (See Second Action NYSCEF No. 45-51). By the Second Action Dismissal Order entered December 22, 2022, the Kings County Court denied Lebovits's motion for a TRO and dismissed the Second Action (noting that a "nearly identical application was made by [Lebovits]" in the First Action and Lebovits "failed to post the required bond to support the injunctive relief" and there was simply "no basis to grant the same relief" in the Second Action). Further, "[t]o the extent that the relief plaintiff seeks in this action differs from that sought by him in the [First] Action, plaintiff may amend his pleadings in the [First] Action."  A copy of the Second Action Dismissal Order is annexed hereto as **Exhibit "HH"**.

44. On December 27, 2022, Lebovits filed a notice of appeal of the dismissal of the Second Action with the Appellate Division (Index No. 2022-10445) and on December 28, 2022 filed yet another motion seeking an immediate TRO and preliminary injunction.

45. On December 29, 2022, the Appellate Division denied Lebovits's request for a TRO and preliminary injunction by striking that provision from the proposed order to show cause. A copy of the TRO Denial Order is annexed hereto as **Exhibit "II"**.

---

[4] "Second Action NYSCEF" refers to the documents on the New York State Courts Electronic Filing System for the Second Action as provided on the document list annexed hereto as **Exhibit "GG"**.

46.     Secured Creditor again undertook efforts to schedule another sale of the Collateral pursuant to the UCC issued a Notification of Disposition of Collateral scheduling a UCC Sale for January 17, 2023 of the membership interests held by 415 Marcy in the Debtor. A copy of the Notice of Disposition for the Second UCC Sale is annexed hereto as **Exhibit "JJ"**.

**The Instant Bankruptcy Proceeding**

47.     On January 16, 2023, just one day before the Second UCC Sale, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. As such, the Second UCC Sale was stayed.

48.     The Petition indicates that that the Debtor did not select to designate itself as a Single Asset Real Estate Debtor, pursuant to 11 U.S.C. §101(51B) [ECF No. 1].

49.     A meeting of creditors pursuant to 11 U.S.C. 341(a) of the Bankruptcy Code is scheduled for February 13, 2023 [ECF No. 13].

50.     The Debtor has not identified any creditors other than Secured Creditor [ECF No. 1].

51.     In addition, the Debtor values the Property at $19,600,00 and lists Secured Creditor with an unsecured claim in the amount of $31,033,782.65 [ECF No. 1, Statement of Financial Affairs, Schedules E/F].

52.     On January 22, 2022, the Debtor filed an application seeking the entry of an Order fixing a deadline and establishing procedures for filing proofs of claim and an application to retain the Law Office of Rachel S. Blumenfeld as counsel to the Debtor [ECF No. 11, 12].

53.     To date, the Debtor has not prosecuted this bankruptcy case to any meaningful extent, including but not limited to, filing a plan of reorganization or making post-petition payments to the Secured Creditor.

54. Accordingly, the Debtor's latest bankruptcy filing is nothing more than a delaying tactic.

55. As forth in the Application, 415 Marcy has not filed for bankruptcy and the Collateral is not property of the Bankruptcy Estate.

56. As the Debtor has no income, the Secured Creditor will be forced to incur post-petition taxes and insurance. As a result, any equity continues to be eroded based upon the Debtor's failure to pay post-petition taxes and insurance.

57. The Secured Creditor has not received any payments during the pendency of the bankruptcy case and the Debtor has failed to cure its default under the terms and the provisions of the Loan Documents.

58. As of January 27, 2023, $33,115,801.81 is due and owing to Secured Creditor. According to the Debtor's Schedules, the total value of the Property is $19,600,000 [See ECF No.1, Schedule A/B]. In addition, Debtor acknowledges in its Schedules that Secured Creditor is owed $31,033,782.65 [See ECF No.1, Schedule E/F]. As such, there is no equity remaining in the Property. In addition, the Property is not used as significant source of income. Accordingly, the value of the Collateral is declining each day as Secured Creditor is prevented from exercising its contractual rights to sell the Collateral pursuant to the UCC.

59. The Debtor's latest bankruptcy filing is nothing more than a delaying tactic because (among other things) the Bankruptcy Case was filed just one day prior to the Second UCC Sale and Debtor and 415 Marcy have exhausted state court remedies to prevent the sale of the Collateral.

[SPACE IS INTENTIONALLY LEFT BLANK]

**WHEREFORE**, Secured Creditor respectfully requests this Court enter an Order granting the Application in its entirety together with such other and further relief as this court deems just and proper.

Dated: New York, New York
       February 2, 2023

                                          */s/ Houdin Honarvar*
                                          Name: Houdin Honarvar
                                          Title: Officer