

### 415-419 Marcy Ave, Brooklyn, NY – DWCRE Loan Term Sheet

We are pleased to provide below an outline of the terms and conditions under which DW Commercial Real Estate, LLC and its affiliates (collectively, "**Lender**") would provide certain senior loan financing (the "**Loan**") to a bankruptcy remote entity (the "**Borrower**") owned and controlled by Guarantor (as defined below). Notwithstanding anything herein to the contrary, with the exception of the sections entitled Exclusivity, Confidentiality, Good Faith Deposit, Underwriting Fee, Brokerage and Costs and Expenses and the last two paragraphs of this document (all of which are binding on the parties hereto), this is a non-binding proposal (this "**Proposal**") and has been made based upon our discussions and the information that has been provided by Sponsor (as defined below) to Lender.

This Proposal is submitted on a confidential basis and Sponsor, for itself and on behalf of Borrower and Guarantor(s) agree that they will not disclose the existence of such Proposal, nor the terms thereof (including, without limitation the "spread") to any other parties other than advisors or partners or investors or potential investors of Borrower, Sponsor or Guarantor(s) on a need to know basis in connection with the consummation of this Proposal who agree to be bound by the confidentiality provisions herein.

| | |
|---|---|
| Site: | 415-419 Marcy Avenue, Brooklyn, NY |
| Property: | Fee interest in a to be developed, 69,582 SF condo building with 24 units |
| Loan Amount: | The lesser of $25.0 MM or 76.5% of approved costs |
| Funding: | Exhibit A sets forth the sources and uses for the project |
| Business Plan: | Borrower shall develop the Property and sell condo units prior to maturity. |
| Sponsors: | JNY Capital LLC |
| Guarantors: | Aron Lebovits and Ezra Unger, Jointly and Severally |
| | Minimum Net Worth Requirement: $30.0 MM |
| | Minimum Liquidity Requirement: $5.0MM |
| Borrower: | The borrower ("Borrower") shall be [TBD], a Delaware limited liability company, a single purpose, entity. Borrower shall own the Property and all related assets and rights and have a capital structure and organizational documents satisfactory to Lender in its sole discretion. Borrower's current structure is attached as Exhibit B. |
| Interest Rate Range: | 30 Day LIBOR + 675 bps; minimum gross rate of 930 bps. Loan shall be current pay at the greater of a floating pay rate equal to six percent and seventy five basis points (6.75%) plus one (1)-month Libor, rounded up to the nearest one-eighth percent (0.125%), payable monthly (actual/360) or nine percent and thirty basis points (9.30%) on the outstanding principal balance. Such interest shall be payable (i) monthly in arrears, and (ii) on the last day of the term. Interest shall be paid from property interest reserve or other cash resources and in accordance with the Loan documents. |
| Amortization: | The Loan shall be interest only. |
| Closing Date: | February 15, 2019 – Borrower and Lender agree to work towards this closing date, both parties agree this date is non-binding but will make best effort to achieve closing date. |

DWP_00049372

| | |
|---|---|
| Term/Extension Options: | 18 months with two 6 month extension options, subject to the payment of the applicable Extension Fee (as defined below) and certain other conditions set forth below. Borrower must provide Lender with written notice not less than thirty (30) days prior to the then scheduled Maturity Date of its intent to extend such Maturity Date. In addition, the extension option is contingent upon the loan being in good standing at the time of extension and: |

- The Loan Amount shall not exceed 75% of the as-is value based on a new appraisal or other evidence of value, in each case satisfactory to Lender in its reasonable discretion, to be performed at Borrower's expense.

- All Reserves have been funded to remaining budgeted amounts and interest payments for the remaining term and there are sufficient amounts available in such Reserves to satisfy the reserve requirements during the extension period.

- No event of default under loan documents has occurred and is continuing.

- Bring down of representations, warranties and compliance with covenants.

- Additional conditions for first extension:

  - $5.0 MM paydown, in accordance with release pricing equal to 120% of allocated loan amount per condominium unit.

- Additional condition for second extension:

  - Additional $10.0 MM paydown, in accordance with release pricing equal to 120% of allocated loan amount per condominium unit.

| | |
|---|---|
| Origination Fee: | 1.0% |
| Exit Fee: | 1.0% |
| Servicing: | $2,000 per month |
| Interest Rate Protection: | Prior to Lender's initial advance, Borrower shall be required to purchase an interest rate cap (in form and substance acceptable to Lender) for the remainder of the Initial Term of the Loan at a strike price equal to 3.0%. Borrower shall also purchase an interest rate cap for each extension period. |
| Extension Fee: | 50 bps for each extension |
| Budget and Schedule: | See Exhibit C for Budget and Schedule, as may be amended by mutual agreement of the parties in accordance with the terms of the Loan Documents. |
| Minimum Interest: | The Loan is open to prepay subject to lender having received aggregate minimum interest payments of $3.55MM. |
| Default Rate: | The default rate of interest will equal a fixed annual rate of interest equal to 18%. |
| Late Payment: | A late payment of five percent (5%) of the late payment amount will be charged on any payment more than seven (7) business days past due. There shall be no late payment charge due on the maturity of the loan. |

DWP_00049373

| | |
|---|---|
| Collateral: | All assets of and all equity in the Borrower, including, without limitation, all assets constituting part of or otherwise related to the Property, which shall be secured by a (i) a first priority lien on the Property, air rights, other rights and all related assets; (ii) a first priority assignment of all inventory, receivables, tax credits, contracts, leases and rents with respect to the Property and all related assets; (iii) a first priority interest in all cash management accounts, escrows and reserves, including the Reserves, and (iv) all other commercially-reasonable collateral requested by Lender. In addition, each owner of an equity interest in Borrower (i.e., 100%) will be required to pledge such equity interest to Lender. In connection with the equity pledge, owners shall be required to deliver certificates of membership interest along with assignments endorsed in blank. |
| Guaranties/Recourse: | Loan principal amount shall be non-recourse with commercially reasonable standard environmental indemnity, bad boy carve outs, completion guaranty, and carry guaranty. |
| Reserve Accounts: | Interest / Servicing Fee Reserve - $2,786,000 will be funded into an Interest Reserve account at closing. |
| | Soft Cost Reserve - $4,574,710 will be funded into a Soft Cost Reserve account at closing |
| | Hard Cost Reserve - $16,851,648 will be funded into a Hard Cost Reserve account at closing |
| | Draws are subject to satisfactory review by Lender and Lender's construction consultant. |
| | Borrower or Guarantor shall be required to fund any shortfalls in Reserve Accounts. |
| | The Reserve Accounts shall be under the sole dominion and control of Lender and shall act as additional security for the Loan. Upon the occurrence and during the continuance of an Event of Default under the Loan Documents, Lender may apply funds in the Interest Reserve Account to the repayment of the Loan in any order or manner determined by Lender in its sole discretion. |
| Cash Flow Sweep: | All excess cash flows, after loan paydowns based on release pricing, will be swept into a Lender controlled account and held, as additional collateral. Lender can use excess cash flows to replenish reserve accounts at its sole discretion. |
| Covenants: | No subordinated debt and other covenants customary for this type of loan. |
| Insurance: | Borrower shall carry insurance policies and/or umbrella policies covering the Borrower and the Property, with Lender as a named insured and loss payee, as applicable, and providing for construction (to the extent construction activities are commencing on the Property), fire, casualty, terrorism and liability coverage complying with Lender's insurance requirements. |
| Funding Subject To: | Lender's conditions precedent to the closing of the Loan shall include all business and legal due diligence and internal approvals, including each of the following and each such item and condition shall be satisfactory to Lender and its counsel in their sole discretion with respect to form, substance, scope and results, as applicable: |

DWP_00049374

- Completion of all due diligence required by Lender in connection with the Loan

- Confirmation of Borrower equity invested at closing of at least $7.7 million

- Updated and Lender approved sources and uses of funds

- Updated and Lender approved budget, including detail of all costs, corporate and real estate revenues, and operating expenses

- Lender approved valuation model of Borrower and detailed market comparable transactions including rentals in similar properties and sales of comparable properties

- An appraisal of the Property prepared by a state certified independent appraiser designated by Lender and satisfactory to Lender in all respects reflecting the as is value of the Property and a Loan to As-Complete Value of not more than 75%

- Confirmation of current ownership structure and debt schedule

- Verification of Guarantor assets, liabilities, net worth and liquidity, including ownership structure, and ability to perform obligations under each of the Guaranties

- DWCRE Credit Committee Approval, including valuation and other items in Lender's sole discretion

- Lender approved loan, closing and related documentation, reflecting terms set forth herein and representations, warranties, covenants and other terms as are customary for a transaction of this type

- Lender approved Phase I environmental report, no further action letters (to the extent applicable) and a construction feasibility report

- Authority and Enforceability opinions of Borrower's counsel with respect to Borrower, Sponsor and Guarantor and the Loan Documents and customary for a transaction of this type.  No non-consolidation opinion to be required

- Lender's title policy as required hereunder

- A current and updated survey for the Property certified to Lender and the title company

- Insurance policies covering the Property complying with Lender's reasonable insurance requirements

- Completion of any regulatory items including licenses and construction and other permits and zoning, including zoning letter sign off from DWCRE counsel

- If required by Lender, a zoning report from PZR or other Lender approved zoning third party.

- Credit reports, personal and business references, background reports and such materials as Lender deems necessary to satisfy its standard due diligence procedures as well as in connection with Lender's obligation to perform Patriot Act searches with respect to Borrower, Sponsor, their direct and indirect owners, the and Guarantor

| Exclusivity: | Lender requires, and each of the undersigned agree, that none of Borrower, Sponsor or Guarantor nor any of their affiliates shall seek, or attempt to obtain, make, accept, negotiate, entertain or otherwise pursue any offers to engage in any debt financing regarding the Property other than the Loan. Such exclusivity period shall begin on the date hereof and shall terminate on February 28, 2019 (the "Exclusivity Date"). In the event that Borrower, Sponsor, Guarantor or any of their affiliates breaches this Exclusivity provision or Lender is ready and willing to make the Loan on terms substantially consistent with those set forth herein (as may be modified and supplemented by the mutual agreement of Borrower and Lender) and Borrower fails to close the Loan on or before the Exclusivity Date, a break-up fee of $200,000 (together with any reasonable enforcement costs relating thereto, the "Break Up Fee") (in addition to any portion of the Good Faith Deposit (as defined below) remaining after payment of costs and expenses therefrom) shall be immediately due and payable to Lender. Payment of the Break-Up Fee, if applicable, is guaranteed by Guarantor. |
|---|---|
| Confidentiality: | This Proposal is being delivered with the understanding that neither this Proposal nor any of its terms or provisions will be disclosed by Borrower or its affiliates to any other person or entity, other than Borrower's accountants, attorneys, financial and other advisers or investors or potential investors and then, in each case, only in connection with the Loan and on a confidential basis, or as may be required by law. |
| Good Faith Deposit: | $100,000. The Good Faith Deposit shall be applied by Lender to the Costs and Expenses payable by Borrower and Sponsor under this Proposal and the Loan Documents, provided, however, the Good Faith Deposit shall in no way limit the Costs and Expenses payable by Borrower and more particularly provided below. Should the proposed transaction not occur, Lender agrees to refund the unused portion of the Good Faith Deposit net of all out-of-pocket Costs and Expenses spent to that point in time (but subject to the terms of the exclusivity section). Wire instructions are attached hereto as Exhibit D. Amounts due hereunder shall be guaranteed by Guarantor. |
| Underwriting Fee: | Borrower shall pay to Lender an Underwriting Fee in the amount of $25,000. The Underwriting Fee shall be deemed earned by Lender upon the execution of this Proposal and is non-refundable. Wire instructions are attached hereto as Exhibit D. |
| Costs and Expenses: | Upon full execution of this Proposal, Borrower, Sponsor and Guarantor authorize Lender to engage legal counsel, and begin due diligence and preparation of the Loan documents prior to receiving credit approval for the Loan. Borrower, Sponsor and Guarantor shall be responsible for all actual out-of-pocket costs and expenses related to the Loan ("Costs and Expenses"), including, but not limited to, (i) reasonable fees and expenses of Lender's outside counsel, (ii) underwriting; (iii) due diligence review (including the engagement of third party consultants to prepare due diligence reports); (iv) Loan documentation; and (v) reasonable miscellaneous out-of-pocket expenses. Borrower, Sponsor and Guarantor, effective upon their acknowledgement and agreement with this Proposal, agree to indemnify and hold Lender and its affiliates harmless from any and all claims and Costs and Expenses related to the Loan and this Proposal. Borrower, Sponsor and Guarantor understand that they will be liable for Costs and Expenses incurred whether or not the Loan is approved or closes. Costs and |

DWP_00049376

Expenses shall be debited first against the Good Faith Deposit and, to the extent this proves insufficient, Lender shall have the right to request additional amounts to pay for such costs and expenses, and upon request of Lender, Borrower, Sponsor and Guarantor will deposit with Lender such amount as specified by Lender to cover such Costs and Expenses. Until such additional funds are received Lender shall be under no obligation to continue the due diligence related to, or the documentation of, the Loan. The obligation to pay such insufficiency shall be an obligation of Borrower, Sponsor and Guarantor shall survive termination of this Proposal. To the extent that the Costs and Expenses exceed the Good Faith Deposit, Lender shall promptly notify Borrower and Guarantor.

**Title Insurance:** As a condition to closing, Lender shall receive at Borrower's expense, a title insurance policy with a liability limit not less than the final loan amount for the Property, insuring the mortgage securing the Loan as a first lien on the title to the Property and issued in such form, and by such title insurance company as shall be satisfactory to Lender. The title insurance policy shall be subject only to such exceptions as shall be approved by and shall contain such endorsements as may be required by, Lender or its counsel. The Title Policy shall be issued by Anthony Chiellino of Prestige Title.

**Broker:** Borrower to pay Galaxy Capital ("Broker") and to indemnify Lender from claims from brokers.

**Assignment:** Upon repayment of the Loan in full, at the request of Borrower, Lender shall at Borrower's election, either (a) prepare a satisfaction of the security instrument, termination of the assignment of leases and terminate all UCC-1 filings with Lender as the secured party or (b) assign the note and the security instrument to any lender that is refinancing the Loan; provided that (i) such assignment shall be without representation, warranty or covenant by Lender, (ii) Borrower and the assignee shall comply with all applicable laws regarding assignments of mortgage liens in New York State, (iii) Lender shall not have any liability as a result of any lost original documents and (iv) Borrower shall pay Lender's reasonable out-of-pocket counsel costs incurred in connection with such terminations or assignment.

**Insurance and Condemnation:** The Loan documents shall provide that insurance/condemnation proceeds will be made available for restoration as work progresses and shall not be subject to any prepayment or make-whole premium.

DWP_00049377

THE TERMS DESCRIBED IN THIS TERM SHEET REPRESENT THE INDICATIVE TERMS UNDER WHICH LENDER MAY CONSIDER PROVIDING CREDIT AS OF <u>JANUARY 18, 2019</u>.  THIS TERM SHEET EXPIRES ON <u>JANUARY 22, 2019</u> AT 5:00 PM EASTERN ("EXPIRATION DATE"), AND AUTOMATICALLY TERMINATES IF IT IS NOT EXECUTED BY BORROWER AND RETURNED WITH THE APPLICABLE EXPENSE DEPOSIT AND APPLICATION FEE ON OR BEFORE SUCH EXPIRATION DATE.

THIS PROPOSAL IS FOR DISCUSSION PURPOSES ONLY AND IS NOT A COMMITMENT OF ANY KIND ON THE PART OF LENDER OR ANY OTHER PARTY AND SHOULD NOT BE RELIED ON AS SUCH.  THE COMMITMENT, IF ANY, WILL OCCUR UPON THE SIGNING AND EXECUTION OF LOAN DOCUMENTS. THIS PROPOSAL REMAINS SUBJECT TO ALL DUE DILIGENCE, CREDIT APPROVAL, AND DOCUMENTATION.  ALL ORAL COMMUNICATIONS BETWEEN THE PARTIES ARE MERGED INTO THIS PROPOSAL.  NO ORAL COMMUNICATIONS BETWEEN THE PARTIES PRIOR TO OR AFTER THE EXECUTION HEREOF SHALL SUPERSEDE OR MODIFY IN ANY MANNER THIS PROPOSAL.  OTHER THAN AS EXPLICITYLY SET FORTH HEREIN, NO LIABILITY SHALL ARISE FROM THIS PROPOSAL AND THE PARTIES EXPLICIT DISCLAIM ANY OBLIGATIONS NOT SET FORTH HEREIN.  NOTWITHSTANDING ANYTHING HEREIN TO THE CONTRARY, THE SECTIONS OF THIS PROPOSAL ENTITLED EXCLUSIVITY, CONFIDENTIALITY, GOOD FAITH DEPOSIT, UNDERWRITING FEE, BROKERAGE AND COSTS AND EXPENSES AND THE LAST TWO PARAGRAPHS OF THIS PROPOSAL ARE BINDING ON THE PARTIES HERETO; SUCH BINDING PORTIONS OF THIS PROPOSAL SHALL BE GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH NEW YORK STATE LAW.

**GUARANTOR:**
Aron Lebovits

By: _____

**GUARANTOR:**
Ezra Unger

By: _____

**BORROWER:**
[_____]

By: _____
Name:
Title:

**SPONSOR:**
[_____]

By: _____

**LENDER:**
**DW Commercial Real Estate, LLC**
**By:  DW Partners, LP**

By: _____
Name: _____
Title: Authorized Signatory

DWP_00049378

## Exhibit A

### Sources and Uses

| SOURCES & USES | | | |
|---|---|---|---|
| | | Total | |
| **Sources** | **$** | **$ / NSF** | **%** |
| Senior Loan | $25,000,000 | $425 | 76.4% |
| Equity | 7,732,359 | 557 | 23.6% |
| **Total** | **$32,732,359** | **$557** | |

| **Uses** | **$** | **$ / NSF** | **%** |
|---|---|---|---|
| Land Purchase Price | $7,000,000 | $119 | 21.4% |
| Hard Costs | 15,675,952 | 267 | 47.9% |
| Soft Costs | 4,356,867 | 74 | 13.3% |
| Origination Fee | 250,000 | 4 | 0.8% |
| Mortgage Broker Fee | 250,000 | 4 | 0.8% |
| Hard Cost Contingency | 1,175,696 | 20 | 3.6% |
| Soft Cost Contingency | 217,843 | 4 | 0.7% |
| Interest / Servicing Fee Reserve | 2,786,000 | 47 | 8.5% |
| Mortgage Recording Tax | 720,000 | 12 | 2.2% |
| Loan Closing Costs | 300,000 | 5 | 0.9% |
| **Total** | **$32,732,359** | **$557** | |

DWP_00049379

**Exhibit B**

**Borrower's Capital Structure**

[INSERT]

DWP_00049380

**Exhibit C**

**Budget and Schedule**

[INSERT]

DWP_00049381

**Exhibit D**

**Wire Instructions**

> **USD Cash Instructions**
>
> Account Name: DW Commercial Real Estate, LLC
> Bank: Bank of America
> ABA: REDACTED
> Account Number: REDACTED