**The Law Offices of Avrum J. Rosen, PLLC**  Hearing Date: March 10, 2023
38 New Street  Hearing Time: 3:00 p.m.
Huntington, N.Y.  11743
(631) 423-8527
*Avrum J. Rosen, Esq.*

*Proposed Counsel for 425 Marcy Avenue, LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:                                                                           Chapter 11

425 Marcy Avenue LLC,                                              Case no: 1-23-40118-ess

                                      Debtor.
-----------------------------------------------------------X

**REPLY OF 425 MARCY AVENUE, LLC TO THE VERIFIED OBJECTION
OF DW MARCY LLC'S (I) APPLICATION FOR AN ORDER
CONFIRMING THE AUTOMATIC STAY IS INAPPLICABLE TO NON-DEBTOR 415
MARCY LLC AND/OR THE COLLATERAL OR, ALTERNATIVELY, RELIEF FROM
THE AUTOMATIC STAY AND (II) MOTION FOR THE ENTRY OF AN ORDER
DISMISSING THE DEBTOR'S BANKRUPTCY CASE OR, IN THE ALTERNATIVE,
<u>DESIGNATING DEBTOR AS A SINGLE ASSET REAL ESTATE DEBTOR</u>**

425 Marcy Avenue, LLC,  ("<u>425 Marcy</u>") by its proposed attorneys, the Law Offices of Avrum J. Rosen, PLLC, as and for its reply of 425 Marcy Avenue, LLC  to the Verified Objection of DW Marcy LLC's (I) Application for an Order Confirming the Automatic Stay is Inapplicable to Non-Debtor 415 Marcy LLC and/or the Collateral or, Alternatively, Relief from the Automatic Stay; and (II) Motion for the Entry of an Order Dismissing the Debtor's Bankruptcy Case or, in the Alternative, Designating the Debtor as a Single Asset Real Estate Debtor, and respectfully represents as follows:

**PRELIMINARY STATEMENT**

415 Marcy Avenue, LLC ("<u>415 Marcy</u>") owns 100% of the Debtor and is the ONLY entity that could have filed a chapter 11 petition (with the consent of the Independent Manager). The filing by Aron Lebovits ("<u>Lebovits</u>"), a former owner of the Property and a former member of 425

Marcy, was without any legal right or authority, and the "retention" of counsel by him, for the Debtor, was also not authorized. Despite this unauthorized filing, 415 Marcy has authorized the ratification of the filing, the retention of this firm to represent the debtor in possession, and has reached a provisional settlement with DW Marcy, LLC (the "Lender") that will result in D.I.P. financing of $2,000,000.00 to the Debtor from an affiliate of 415 Marcy, with an immediate advance of $1,000,000.00 to be paid to the Lender for adequate protection, reinstatement and modification of the Loan Documents[1], which will be done through a consensual plan and which will permit the completion of the construction of the condominium project and the sale of all of the units. It is 425 Marcy's understanding that the Independent Manager will consent to ratify this filing as well, if 415 Marcy is recognized to be the sole member of the Debtor at this time, with the sole power to manage the Debtor as a debtor in possession. The issues raised in the Objection to the Motions all relate to disputes between equity and former equity and can be litigated concurrently in this Court or in the State Court[2] and have nothing to do with the current management and construction of the Property of the Debtor.

1.      As was set forth in both motions filed by the Lender, it is clear, as a matter of law, that Lebovits had absolutely no right or power to file this case. It is disturbing that this case was filed days after the New York State Supreme Court issued a decision annexed hereto as Exhibit "A" (which was not disclosed in the Rule 1007 Affidavit), that expressly held that Lebovits was **not** entitled to recission of the multiple agreements he executed transferring his interests in the Debtor. Thus, it has already been determined that even if he prevailed on all his other claims, he would only have a damage claim against 415 Marcy and/or Ezra Unger ("Unger"). Under no

---

[1] All capitalized terms to have the meaning set forth in the Motions to Dismiss and to Lift the Stay unless otherwise defined herein.
[2] All parties rights to remove that action are preserved, as well as all parties rights to oppose such a removal.

circumstances would he have a right to get back his equity interests the Debtor. The same decision was rendered as to Lender's Loan Documents and security interests. Thus, those documents are enforceable liens against the Debtor.

2.      Of equal import is that part of the decision which addressed his claims that the operative documents were forged. Despite casting extreme doubt on the veracity of those allegations, due to one of the documents having been sent by Lebovits himself and then his understanding of the document having been verified by his own attorney, plus the other document having been duly notarized, the Court stated there were still narrow issues of fact to be determined. This filing also stayed a hearing on those discreet issues. If Lebovits loses a hearing on the veracity of his signatures, his case is over. Copies of those documents are annexed hereto as Exhibits "B"," C" and "D". A review of these documents demonstrates that Lebovitz was a savy real estate owner that took steps to have another party bear all the risk and expense of developing his Property and attempted to minimize the tax implications of these transactions. Moreover, the placing of the new mortgages with the Lender provided substantial consideration to Lebovits. That financing paid off millions upon millions of dollars of financing that Lebovits was personally liable for with debt that 415 Marcy and Unger were now liable for.

3.      The present case is similar to the facts presented in *In re Arista Imaging of N. Miami, LLC*, Nos. 19-26519-AJC, 19-26520-AJC, 2020 Bankr. LEXIS 336 (Bankr. S.D. Fla. Feb. 7, 2020). In that case, Judge Cristol held that a case was filed without authority under very similar circumstances. The party filed that case after losing a case in state court to obtain control over the debtor. The filing violated the express terms of the operating agreement and expressly did not meet the voting percentages required by the operating agreement. *See In re 3P Hightstown, LLC*,

631 B.R. 205 (Bankr. D.N.J. 2021) (Case dismissed where filing violated terms of the Operating Agreement).

4. Another case almost directly on point is *Moffa & Breuer, PLLC v. Marchelos*, No. 18-cv-62095-BLOOM, 2019 U.S. Dist. LEXIS 74726 (S.D. Fla. May 2, 2019). In that case the District Court denied the fee application of counsel for the debtor in its entirety, wherein a case was filed without the requisite authority.

5. It is also clear that Lebovits' proposed counsel for the Debtor, who cannot be retained by this Court for these same reasons as to lack of corporate capacity, knew of the infirmities in filing this petition. Nowhere does Lebovits sign any document as "Managing Member" or even "Member". Everything is signed as "Owner", although it is clear the Debtor is an LLC, which can only act as set forth in its corporate documents.

6. The corporate authorization, [Dkt. No. 5] is also clearly deficient on its face. It does not represent that any notice of the meeting was given, nor that any members were present, let alone a majority of the members. It is signed by Lebovits, without any indication of his authority. In other words, it is a nullity. Moreover, the 2017 First Amended Operating Agreement, annexed hereto as Exhibit "E", required, on page 3, par. (s) that any action related to insolvency required unanimous consent. So, even if the recission action had been granted and Lebovits were restored to his 51% interest, (no issue was ever raised as to the legitimacy of the initial transfer of the 49% interest) this filing would still not have been properly authorized.

7. The Second Amended Operating Agreement, annexed hereto as Exhibit "F", also required unanimous consent of the Manager, who is Unger, as well as the consent of the Independent Manager. Neither of those consents were obtained prior to the filing of this petition.

8.      In addition to the retention of Ms. Blumenfeld not being authorized by the deficient corporate authorization and the apparent filing of this case in blatant derogation of the law, there is another serious issue regarding her retention and the filing of this Petition.

9.      The Statement of Financial Affairs and the Retention Application [Dkt. No. 12] discloses all of the parties that provided funding for this unauthorized petition. Among them is Regal Management Services, ("Regal") who paid $15,000.00 to proposed counsel. Not only is there no *Lar Dan* affidavit from Regal,[3] the payment by Regal to counsel of this retainer is a blatant violation of a Court approved Arbitration Judgment between the Debtor and Regal's owners. Upon information and belief, Regal is owned by Yehuda Arye Miller and Berish Scwimmer. Those individuals were parties to that Arbitration Agreement. That Arbitration resulted in several decisions. One of those decisions and the related Court Order enforcing one portion of it are annexed as Exhibit "G". The arbitration was with the proposed purchaser of the commercial condominium unit in the proposed project. As part of the arbitration award, neither party was to take *any* action to interfere with the Debtor completing the project outside of the Rabbinical Court. Apparently, Regal did not know its secret financing of this unauthorized petition would be disclosed. This creditor secretly funding the retention (the relationship is not even disclosed) disqualifies proposed counsel in and of itself. The Debtor will respect the Arbitration award and address these breaches by Regal before that Rabbinical Court.

10.     A further problem with this filing is that the list of equity holders in the Petition is filed as "None". This is another blatant misrepresentation and an attempt to obfuscate the facts of this case.

---

[3] The Lar dan affidavits of all the other funders are at Docket No. 16.

11. The Objection raised a whole host of claims and allegations that have been raised and re-raised in hundreds of entries before the State Court. One of the many of Ezra Unger's Affidavits in that action is annexed hereto as Exhibit "H" to rebut these baseless accusations. It must be noted that this case was filed to stop the State Court from scheduling an evidentiary hearing to examine the authenticity of one of the assignments. A document that was duly authorized and was similar to a previous document. Moreover, Lebovits' claims of no consideration are simply outright falsehoods. Annexed hereto as Exhibit "I" is a copy of the spreadsheet showing all of the payments made to him or on his behalf as part of the consideration, and indeed, the balance of the consideration is not even due yet pursuant to the Assignment documents.

12. This Reply is filed to advise this Court as to the accurate state of affairs in this case. Moreover, it is filed to show that at least some of the parties have worked hard to establish an exit strategy for this case, with a consensual plan, DIP financing, a restructured secured claim, that provides millions of dollars to complete the construction of the project, and preserves all of the equity and prior equity holders' rights to fight over any remaining equity.

13. However, time is of the essence. Construction projects do not improve with age. The debtor has negotiated a good deal with the Lender, that will be imperiled if there are further interest hikes in the market. Central to this deal is an adequate protection payment to the Lender of a million dollars in the next week or two.

14. Simply put, Lebovits has attempted to use the Bankruptcy process to prevent a resolution of this dispute to gain leverage for his own personal gain to the detriment of the Debtor and its creditors. He filed a Chapter 11 petition with no authority, simply to obtain leverage and to forestall an evidentiary hearing on an alleged forged Second Assignment. The Debtor's actual

management has fulfilled its fiduciary duty by agreeing to lend another two million dollars to the Debtor as part of a deal with the Lender to obtain the financing to finish the construction and pay all creditors with a distribution to equity. The relief sought herein should be granted.

**WHEREFORE**, it is respectfully requested that the Court determine that the case was commenced without authority, but that that filing is ratified, if 415 Marcy is the Managing Member of the debtor in possession and authorized to act on behalf of the Debtor. In that event the pending motions would be adjourned and a motion for DIP financing will be filed shortly, together with such other and further relief as this Court deems just and proper.

Dated: March 8, 2023  
       Huntington, New York

Respectfully submitted,

**Law Offices of Avrum J. Rosen, PLLC**

By: */s/ Avrum J. Rosen*  
Avrum J. Rosen, Esq.  
38 New Street  
Huntington, NY 11743  
(631) 423-8527  
arosen@ajrlawny.com

*Proposed Counsel for the Debtor  
and Debtor-In-Possession*