**The Law Offices of Avrum J. Rosen, PLLC**      Hearing Date: November 9, 2023
38 New Street     Hearing Time: 10:30 a..m.
Huntington, N.Y.  11743
(631) 423-8527
*Avrum J. Rosen, Esq.*

*Proposed Counsel for 425 Marcy Avenue, LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In Re:     Chapter 11

425 Marcy Avenue LLC,     Case no: 1-23-40118-ess

                             Debtor.
-----------------------------------------------------------X

### OPPOSITION OF 425 MARCY AVENUE, LLC TO THE MOTION OF THE OFFICE OF THE UNITED STATES TRUSTEE TO DISMISS THIS CHAPTER 11 CASE BY 425 MARCY AVENUE, LLC

425 Marcy Avenue, LLC, ("425 Marcy") by its proposed attorneys, the Law Offices of Avrum J. Rosen, PLLC, as and for its Opposition of 425 Marcy Avenue, LLC to the Office of the United States Trustee's ("UST") Motion for the Entry of an Order Dismissing the Debtor's Bankruptcy Case (the "Motion"), respectfully represents as follows:

### PRELIMINARY STATEMENT

At the outset, the undersigned apologizes for the lateness of this Opposition. As was discussed at the last hearing on this matter, all litigation in this matter was on "hold" while the mediation was in progress. While there was a consensual deal with the Lender when this case was first commenced, there was a default under the agreements between the parties involved in the loan that short circuited those negotiations until that dispute was resolved. That dispute has now been resolved by a UCC sale of the membership interests in the Lender. As a result, those negotiations have resumed and are close to fruition.

1

As part of those negotiations, it is anticipated that the undersigned will file the appropriate pleading to determine the true ownership of the Debtor and to formally ratify this unauthorized filing.

As set forth in the Reply to the prior motions in this case, 415 Marcy Avenue, LLC ("415 Marcy") owns 100% of the Debtor and is the ONLY entity that could have filed a chapter 11 petition (with the consent of the Independent Manager). The filing by Aron Lebovits ("Lebovits"), a former owner of the Property and a former member of 425 Marcy, was without any legal right or authority, and the "retention" of counsel by him, for the Debtor, was also not authorized.

Despite this unauthorized filing, 415 Marcy has authorized the ratification of the filing, the retention of this firm to represent the debtor in possession, and anticipates it will reach a settlement with DW Marcy, LLC or its assigns (the "Lender") that will result in D.I.P. financing to be paid to the Lender for adequate protection, reinstatement and modification of the Loan Documents[1], which will be done through a creditor, or a consensual plan, and which will permit the completion of the construction of the condominium project and the sale of all of the units. It is 425 Marcy's understanding that the Independent Manager will consent to ratify this filing as well, if 415 Marcy is recognized to be the sole member of the Debtor at this time, with the sole power to manage the Debtor as a debtor in possession.

The issues raised in the Objection to the Lender's motions all relate to disputes between equity and former equity and can be litigated concurrently in this Court or in the State Court[2] and have nothing to do with the current management and construction of the Property of the Debtor.

---

[1] All capitalized terms to have the meaning set forth in the Motions to Dismiss and to Lift the Stay unless otherwise defined herein.

[2] All parties rights to remove that action are preserved, as well as all parties rights to oppose such a removal.

1. A short history of what has transpired in this case so far is in order. As was set forth in both motions filed by the Lender, it is clear, as a matter of law, that Lebovits had absolutely no right or power to file this case. It is disturbing that this case was filed days after the New York State Supreme Court issued a decision annexed as Exhibit "A" to the undersigned's Reply to those motions (which was not disclosed in the Rule 1007 Affidavit), that expressly held that Lebovits was **not** entitled to recission of the multiple agreements he executed transferring his interests in the Debtor. Thus, it has already been determined that even if he prevailed on all his other claims, he would only have a damage claim against 415 Marcy and/or Ezra Unger ("Unger"). Under no circumstances would he have a right to get back his equity interest in the Debtor. The same decision was rendered as to Lender's Loan Documents and security interests. Thus, those documents are enforceable liens against the Debtor.

2. Of equal import is that part of the decision which addressed his claims that the operative documents were forged. Despite casting extreme doubt on the veracity of those allegations, due to one of the documents having been sent by Lebovits himself and then his understanding of the document having been verified by his own attorney, plus the other document having been duly notarized, the Court stated there were still narrow issues of fact to be determined. This filing also stayed a hearing on those discreet issues. If Lebovits loses a hearing on the veracity of his signatures, his case is over. Copies of those documents were annexed to the Reply as Exhibits "B"," C" and "D". A review of these documents demonstrates that Lebovitz was a savy real estate owner that took steps to have another party bear all the risk and expense of developing his property and attempted to minimize the tax implications of these transactions. Moreover, the placing of the new mortgages with the Lender provided substantial consideration for Lebovits. That financing

paid off millions upon millions of dollars of financing that Lebovits was personally liable for with debt that 415 Marcy and Unger were now liable for.

3. It is also clear that Lebovits' proposed counsel for the Debtor, who cannot be retained by this Court for these same reasons as to lack of corporate capacity, and the failure to provide a proper *Lar Dan* affidavit disclosing just who was financing this case, knew of the infirmities in filing this petition. Nowhere does Lebovits sign any document as "Managing Member" or even "Member". Everything is signed as "Owner", although it is clear the Debtor is an LLC, which can only act as set forth in its corporate documents.

4. The corporate authorization, [Dkt. No. 5] is also clearly deficient on its face. It does not represent that any notice of the meeting was given, nor that any members were present, let alone a majority of the members. It is signed by Lebovits, without any indication of his authority. In other words, it is a nullity. Moreover, the 2017 First Amended Operating Agreement, annexed hereto as Exhibit "E", required, on page 3, par. (s) that any action related to insolvency required unanimous consent. So, even if the recission action had been granted and Lebovits were restored to his 51% interest, (no issue was ever raised as to the legitimacy of the initial transfer of the 49% interest) this filing would still not have been properly authorized.

5. The Second Amended Operating Agreement, annexed to the Reply as Exhibit "F", also required unanimous consent of the Manager, who is Unger, as well as the consent of the Independent Manager. Neither of those consents were obtained prior to the filing of this petition.

6. In addition to the retention of Ms. Blumenfeld not being authorized by the deficient corporate authorization and the apparent filing of this case in blatant derogation of the law, there is another serious issue regarding her retention and the filing of this Petition.

7.     The Statement of Financial Affairs and the Retention Application [Dkt. No. 12] discloses all of the parties that provided funding for this unauthorized petition. Among them is Regal Management Services, ("Regal") who paid $15,000.00 to proposed counsel. Not only is there no *Lar Dan* affidavit from Regal,[3] the payment by Regal to counsel of this retainer is a blatant violation of a Court approved Arbitration Judgment between the Debtor and Regal's owners. Upon information and belief, Regal is owned by Yehuda Arye Miller and Berish Scwimmer. Those individuals were parties to that Arbitration Agreement. That Arbitration resulted in several decisions. One of those decisions and the related Court Order enforcing one portion of it are annexed to the Reply as Exhibit "G". The arbitration was with the proposed purchaser of the commercial condominium unit in the proposed project. As part of the arbitration award, neither party was to take *any* action to interfere with the Debtor completing the project outside of the Rabbinical Court. Apparently, Regal did not know its secret financing of this unauthorized petition would be disclosed. This creditor secretly funding the retention (the relationship is not even disclosed) disqualifies proposed counsel in and of itself. The Debtor will respect the Arbitration award and address these breaches by Regal before that Rabbinical Court.

8.     A further problem with this filing is that the list of equity holders in the Petition is filed as "None". This is another blatant misrepresentation and an attempt to obfuscate the facts of this case.

9.     Simply put, Lebovits has attempted to use the Bankruptcy process to prevent a resolution of this dispute to gain leverage for his own personal gain to the detriment of the Debtor and its creditors. He filed a Chapter 11 petition with no authority, simply to obtain leverage and to forestall an evidentiary hearing on an alleged forged Second Assignment.

---

[3] The Lar dan affidavits of all the other funders are at Docket No. 16.

5

10. Turning to the present Motion. The undersigned appreciates the UST's frustration with this case. However, this Court chose not to rule on the pending motions and to send the parties to mediation. All of the parties stood down and participated in good faith, as reflected in the mediator's report. That settlement process is continuing, and the undersigned is prepared to promptly bring on a proceeding to determine corporate authority and to move the case forward. That issue must be determined to move this case forward in a positive manner.

11. The Court will recall that it was 415 Marcy that arranged for DIP insurance when the case was first filed and recently arranged for DIP premium financing, which was withdrawn when the Lender's new management made a protective advance for the insurance. Leibovitz has done nothing to advance this case except open a DIP account and advance the minimal UST fees. The undersigned requested copies of the bank statements so that the MOR's could be prepared and filed. After an email exchange between all the parties, Ms. Blumenfeld has refused to turn them over and has represented that they will be filed before the hearing on this Motion.

12. For all of the foregoing reasons, it is respectfully requested that the UST's Motion be adjourned for a period of sixty (60) days to provide all of the parties to file the pleadings that they believe necessary to advance this case. The Lender has agreed to adjourn the current motions as well, and it can speak as to the length of those adjournments.

**WHEREFORE**, it is respectfully requested that the Court the Motion to dismiss be adjourned and, such further relief as this Court deems just and proper.

Dated: November 7, 2023    Respectfully submitted,
Huntington, New York

**Law Offices of Avrum J. Rosen, PLLC**

By:    */s/ Avrum J. Rosen*
Avrum J. Rosen, Esq.
38 New Street
Huntington, NY 11743

(631) 423-8527
arosen@ajrlawny.com

*Proposed Counsel for the Debtor
and Debtor-In-Possession*